UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| WILLIAM FUDGE, on behalf of himself and all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) LOVE'S TRAVEL STOPS & COUNTRY STORES, INC, d/b/a/ Love's, ) ) ) Defendant. ) | Lead File No. 2:23-cv-00030<br><br>This Document Relates to:<br>ALL ACTIONS |

## MEMORANDUM OPINION

Pending before the Court is Defendants' Motion to Dismiss Class Action Complaint (Doc. No. 45), which seeks to dismiss Plaintiffs' three consolidated cases. The motion has been fully briefed, (Doc. Nos. 46, 47, 49), and, on December 21, 2023, the Court held oral argument on the issues raised. (Doc. No. 59). For the following reasons, the Court will grant Defendants' Motion (Doc. No. 45).

### ALLEGED FACTS AND BACKGROUND

The Court relies on the relevant factual allegations from the Complaints (Case No. 2:23-cv-00030, Doc. No. 1 ("Fudge Complaint"); Case No. 2:23-cv-00036, Doc. No. 1 ("Watson Complaint"); Case No. 3:23-cv-00589, Doc. No. 1 ("Baird Complaint")) and assumes they are true for purposes of ruling on the instant motions. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

In May and June 2023, Plaintiffs William Fudge, Jason Watson, and Mark Baird each pulled into a gas station owned by one of the Defendants to purchase premium gas. (Fudge Complaint ¶ 20; Watson Complaint ¶ 20; Baird Complaint ¶ 20). Fudge went to a gas station owned by Love's Travel Stops & Country Stores, Inc, ("Love's"), (Fudge Complaint ¶ 20); Watson

went to one owned by Murphy Oil USA, Inc. (Watson Complaint ¶ 20); and Baird went to one owned by Speedway LLC, (Baird Complaint ¶ 20). When they arrived, each approached one of the available "single-nozzle fuel dispensing systems" (i.e. gas-pumps), selected the highest-grade and most expensive fuel offered ("premium gas"), and began pumping gas, (Fudge Complaint ¶ 22; Watson Complaint ¶ 22; Baird Complaint ¶ 22). Fudge spent $18.06 on 4.754 gallons of premium gas, (Fudge Complaint ¶ 23); Watson spent $61.15 on 16.182 gallons of premium gas, (Watson Complaint ¶ 23); and Baird spent $58.13 on 14.536 gallons of premium gas, (Baird Complaint ¶ 23).

Although Fudge, Watson, and Baird were each charged the rate for premium gas throughout their respective purchases, the customers immediately before them had purchased and pumped regular gas—the lowest-grade and cheapest fuel available. (Fudge Complaint ¶ 25; Watson Complaint ¶ 25; Baird Complaint ¶ 25). Because each of Love's, Murphy Oil's, and Speedway's gas-pumps use a single-nozzle system, each hose Plaintiffs used contained some residual volume of regular gas from the prior customer's purchase. (Id.). Thus, Plaintiffs were each charged the premium rate for that amount of regular gas. (Fudge Complaint ¶ 26; Watson Complaint ¶ 26; Baird Complaint ¶ 26).

In the months that followed, Plaintiffs filed three class action lawsuits to recoup the difference in price between that residual volume of regular gas and the same amount of premium gas. To this end, each complaint alleged breach of contract ("Count 1"), unjust enrichment ("Count 2"), and money had and received ("Count 3"). (Fudge Complaint ¶¶ 38–52; Watson Complaint ¶¶ 38–52; Baird Complaint ¶¶ 38–52). Plaintiffs also sought a declaratory judgment that the Defendants have "no legal right to retain the difference between the price of the premium motor fuel charged and the concurrent price of the lower grade motor fuel for the residual amount of fuel

left in the pump from a prior customer that pumped lower grade motor fuel." (Fudge Complaint ¶¶ 53–55; Watson Complaint ¶¶ 53–55; Baird Complaint ¶¶ 53–55). Because Plaintiffs' allegations and claims are, in all relevant respects, identical, the Court consolidated the three cases for pretrial purposes and administratively closed the two latter filed cases. (Case No. 2:23-cv-00030, Doc. No. 23 at 2–4; Case No. 2:23-cv-00036, Doc. No. 12 at 2–4; Case No. 3:23-cv-00589, Doc. No. 12 at 2–4).

On September 27, 2024, Defendants filed a joint Motion to Dismiss Class Action Complaints and an accompanying memorandum, seeking dismissal of all counts in all Plaintiffs' cases. (Doc. Nos. 45–46). After the motion was fully briefed and ripe for review, on December 21, 2023, the Court heard oral argument on the motion. (Doc. No. 59).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020). In determining whether a complaint meets this standard, the Court must accept all the factual allegations as true, draw all reasonable inferences in the plaintiffs' favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018). Accordingly, the complaint must "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." Eidson v. Tenn. Dep't of Child.'s Servs., 510 F.3d 631, 634 (6th Cir. 2007) (citing Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005)). The Court will not accept a legal conclusion masked as a factual allegation, nor an "unwarranted factual inference," as true. Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007).

3

## ANALYSIS

Defendants present two primary arguments for dismissal. *First*, Defendants argue that Plaintiffs' claims are preempted both by the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2821–24, and by the National Institute of Standards and Technology and the National Conference on Weights and Measures' Handbook. (Doc. No. 46 at 9–23). *Second*, Defendants argue that Plaintiffs fail to state a plausible claim for relief on any of their alleged Counts. (Id. at 23–25). At oral argument, Plaintiffs explicitly abandoned Counts 1 and 3 in every case, as well as their requests for declaratory relief.[1] (See Doc. No. 59 at 46:2–7 ("The Court: So you're abandoning the breach of contract claim. Mr. Goldman: We are relying on the unjust enrichment claim. The Court: Only? Mr. Goldman: Only.")). Thus, across all three cases, only Plaintiffs' unjust enrichment claims remain. (Id.). Though Plaintiffs tried extending their Complaints' mileage by refining their causes of action, they did not realize they were already driving on fumes.

In their brief, Plaintiffs conceded that the Uniform Commercial Code ("UCC") governs their contractual transactions with Defendants. Defendants raised this argument specifically in reference to whether Plaintiffs had stated plausible claims for unjust enrichment. (Doc. No. 46 at 25–26). As Defendants explained, "[b]ecause the UCC created an enforceable contract among the parties, the only dispute left concerns the scope of the contracts' terms . . . . not a dispute that a contract exists." (Doc. No. 46 at 25–26). According to Defendants, Tennessee law therefore forbids Plaintiffs from pursuing quasi-contractual claims like unjust enrichment. (Id. at 26; see also Metro. Gov't of Nashville & Davidson Cnty. v. Cigna Healthcare of Tenn., Inc., 195 S.W.3d

---

[1] In any case, Counts Two and Three are redundant. See Broadnax v. Swift Transportation Co., Inc., 694 F. Supp. 2d 947, 952 (W.D. Tenn. 2010) ("A claim for money had and received is the equivalent of a claim for unjust enrichment under Tennessee law.") (citing Bennett v. Visa U.S.A., Inc., 198 S.W.3d 747, 755 (Tenn. Ct. App. 2006)).

4

28, 33 (Tenn. Ct. App. 2005) ("Because a contract implied in fact exists, Metro is precluded from recovering damages under the equitable theory of unjust enrichment.")).

Plaintiffs make no reference to the UCC, let alone the crux of Defendants' argument, (see generally, Doc. No. 47) and, by failing to do so, doom their claim. Instead, Plaintiffs ask the Court to consider a new theory based on a lack of mutual assent that appears nowhere in their three Complaints. (See id. at 22–23). But their briefing leaves no question that this unpleaded theory relies on allegations outside of their operative Complaints; Plaintiffs cite one of Defendants' statements from a Joint Status Report (Doc. No. 37) and comment, "Accordingly, because there was *apparently* no meeting of the minds, there was no enforceable contract between Plaintiffs and Defendants." (Doc. No. 47 at 22 (emphasis added)). Were it not enough to dispose of Count 2 because Plaintiffs failed to respond to Defendants' UCC argument—which it is, see ARJN #3 v. Cooper, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021) ("Where a party fails to respond to an argument in a motion to dismiss the Court assumes he concedes this point and abandons the claim." (internal quotation marks and citation omitted))—Plaintiffs' unpleaded theory does not just rely on allegations outside of the Complaints, but also contradicts allegations Plaintiffs specifically pleaded.

Plaintiffs alleged a contract existed between each of them and the Defendant in their respective cases. Although Plaintiffs assert in their briefing that they alleged unjust enrichment in the alternative to their breach of contract claim, (Doc. No. 47 at 1), a cursory review of the three Complaints proves otherwise. The very first allegation specific to Count 2 "realleges and incorporates by reference" every prior paragraph in the Complaint. (Fudge Complaint ¶ 43; see also Watson Complaint ¶ 43 (same); Baird Complaint ¶ 43 (same)). One need not look far—just three paragraphs above—to find the allegations in which Plaintiffs assert they "agreed to pay [their

5

respective Defendant] the offered price for premium motor fuel in exchange for receiving motor fuel." (Fudge Complaint ¶ 39; Watson Complaint ¶ 39; Baird Complaint ¶ 39). "As a general rule, a Court considering a motion to dismiss must focus only on the allegations in the pleadings. This does not include plaintiffs' responses to a motion to dismiss." <u>Waskul v. Washtenaw Cnty. Cmty. Mental Health</u>, 979 F.3d 426, 440 (6th Cir. 2020) (internal quotation marks and citations omitted). Plaintiffs offer no cogent explanation for why this Court should depart from binding Sixth Circuit precedent and accept their unpleaded theory. (Doc. No. 47 at 22–23). The proper mechanism through which Plaintiffs could amend their pleadings is a Rule 15 motion, not via an opposition to a motion to dismiss. <u>See</u> <u>Waskul</u>, 979 F.3d at 440 ("If plaintiffs believe they need to supplement their complaint with additional facts to withstand a motion to dismiss . . . they have a readily available tool: a motion to amend the complaint under Rule 15." (internal quotation marks and citations omitted)).

Plaintiffs knew or, at the very least, should have known of their precarious position ahead of oral argument. Defendants' reply brief observed that "Plaintiffs fail to address the fact that the UCC creates a contract, so no quasi-contractual claims are allowed." (Doc. No. 49 at 13). And, at oral argument, the Court explicitly discussed with Defendants the import of their uncontested UCC argument and Plaintiffs' consistent allegations that a contract did exist. (<u>See, e.g.</u>, Doc. No. 59 at 87:1–13 ("Mr. Rogers: . . . So, by their basic pleadings, they pled that a contract exists, and they've incorporated their allegations into their unjust enrichment claim. So the pleading is fatally defective. So the only question is whether they would be allowed to amend to cure that. And the answer is no. If we look to the Tennessee UCC - - - The Court: I don't think I have a motion to amend before me.")). Indeed, near the end of that discussion, the Court suggested that it might be in Defendants' interest to stop mentioning the need for a motion to amend. (<u>See</u> <u>id.</u> at 93:1–5

6

("Mr. Rogers: . . . [A]s Your Honor noted, there's no motion to amend before you and the complaint pleads the existence of a contract. The Court: But y'all are begging them to make one. Don't do that.")). In response, Plaintiffs merely stated that they had no intention of amending the operative Complaints because they believe that they pleaded their unjust enrichment claims in the alternative. (Id. at 96:23–97:3). For the reasons already described, that is flatly wrong. Eight months after oral argument, Plaintiffs still have not filed a motion to amend.

The Court need not reach Defendants' preemption arguments. With no other live claim, Plaintiffs' tank is empty.

## CONCLUSION

For the forgoing reasons, the Court will grant Defendants' Motion to Dismiss (Doc. No. 45).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE